UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM** <br> <u>OPINION AND ORDER</u> |
| -against- | |
| DARREN PARKER, | 21-CV-09558 (PMH) |
| Defendant. | 20-CR-00224-2 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Darren Parker ("Parker") moves *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Petition"). Liberally construed, Parker's claims are summarized as follows: (1) Parker received ineffective assistance of counsel; (2) this Court lacked subject matter jurisdiction; (3) the statute under which he was convicted is unconstitutional; (4) the indictment was defective; and (5) his due process rights were violated. (Civ. Doc. 1, "Pet.").[1] Parker has also filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion") on the grounds that he has a serious physical or medical condition and is at increased risk of severe illness should he contract the COVID-19 virus again. (Crim. Doc. 115, "Mtn."; Crim. Doc. 117, "Supp. Mtn.").

Parker is currently serving a 60-month sentence at FCI Danbury ("Danbury"), a low-security federal correctional institution, after having been convicted on October 21, 2021, following his guilty plea pursuant to a plea agreement, of conspiracy to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl. When he filed the Petition and the Motion, Parker was housed at the Westchester County Jail ("WCJ") and has since been transferred to Danbury, a Federal Bureau of Prisons ("BOP") facility.

---

[1] Parker's motion was treated as a petition commencing a civil action, No. 21-CV-09558. Citations to the electronic docket in the criminal proceeding are referred to herein as "Crim. Doc." and citations to the electronic docket in the civil proceeding are referred to herein as "Civ. Doc.".

For the reasons set forth below, the motion for relief under 28 U.S.C. § 2255 is DENIED and the Petition is DISMISSED. The Court further concludes that a reduction in Parker's sentence is neither "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A), and the Motion is, accordingly, DENIED.

## BACKGROUND[2]

Parker was part of an active and industrious narcotics conspiracy in Poughkeepsie, New York. (PSR ¶ 32). On March 25, 2020, agents from the U.S. Drug Enforcement Administration ("DEA") arrested Parker on an Indictment, which charged him with, *inter alia*, conspiring to distribute and possess with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. (PSR ¶¶ 1-3, 17). He had been intercepted over wiretaps ordering large amounts of controlled substances from his supplier, co-defendant Michael Nicholas. (*Id.* ¶¶ 14-16). The Government's investigation revealed that Parker has ordered at least approximately 220 grams of fentanyl. (*Id.*). Parker was released on March 25, 2020 on an unsecured bond. (Crim. Doc. 10). On September 28, 2020, while on bail, Parker was arrested and charged with "Obstructing Governmental Administration 2nd Degree; [and] Aggravated Unlicensed Operation - Alcohol Related and Traffic Device Violation - Passing a Red Light." (PSR ¶ 8).

On November 10, 2020, Parker appeared before this Court and pled guilty to the lesser included offense charged in Count One of the Indictment pursuant to a written plea agreement dated August 21, 2020. (Civ. Doc. 10-2, "Plea Tr."). After placing Parker under oath, the Court

---

[2] The Court draws the background facts principally from the Petition, the supplement to the Petition (Civ. Doc. 2, "Supp. Pet."), the Government's opposition thereto (Civ. Doc. 10, "Gov't Pet. Opp."), and Parker's reply (Civ. Doc. 14, "Pet. Decl."; Civ. Doc. 15; Civ. Doc. 16, "Pet. Reply"), as well as the record of the underlying criminal proceeding, including the Presentence Investigation Report dated February 1, 2021, prepared by the Probation Office in connection with Parker's sentencing (Crim. Doc. 55, "PSR").

conducted a thorough allocution of him. (*Id.* at 5-9). Among other things, Parker affirmed that he had attended school through the eleventh grade; that the medications he was taking for anxiety did not affect his ability to understand the proceedings; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications and one beer. (*Id.* at 7-8). Parker further affirmed that his mind was clear and that he understood what was happening. (*Id.* at 8).

Parker confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id.* at 8-9). The Government and defense counsel likewise represented that they had no doubts as to Parker's competence to plead guilty. (*Id.* at 6). Accordingly, the Court found that, on the basis of Parker's responses to the Court's questions, its observations of his demeanor, and the views of counsel, Parker was fully competent to enter an informed plea. (*Id.* at 9).

Under the terms of the August 21, 2020 plea agreement which Parker signed on November 10, 2020 (*id.* at 20-21; Civ. Doc. 10-1, "Plea Agreement" at 7), among other things, the Government agreed to accept a guilty plea allocution from Parker to conspiring to distribute and possess with intent to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. (Plea Tr. at 14). The parties stipulated to a base offense level of 26 under the United States Sentencing Guidelines (the "Sentencing Guidelines") for an offense involving at least 160 grams but less than 280 grams of fentanyl; a final offense level of 23; seven criminal history points; and a Stipulated Sentencing Guidelines Range of 70 to 87 months' imprisonment, with a mandatory minimum statutory term of 60 months' imprisonment. (*Id.* at 22; *see generally* Plea Agreement).[3] Parker admitted the

---

[3] Although the parties stipulated to seven criminal history points and a Sentencing Guidelines Range of 70 to 87 months, at Parker's sentencing, as discussed *infra*, the Government conceded—and the Court found—

forfeiture allegations with respect to Count One of the Indictment and agreed to forfeit a sum of money equal to $14,300, and consented to the entry of the Consent Order of Forfeiture annexed to the plea agreement. (Plea Tr. 23-26, Plea Agreement at 2).

Parker also stipulated in the plea agreement that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 70 to 87 months' imprisonment," or "any term of supervised release that is less than or equal to the statutory maximum." (Plea Tr. at 23; Plea Agreement at 5). In addition, Parker agreed to "waive[] any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material[.]" (Plea Tr. at 23; Plea Agreement at 5).

The Court, at the November 10, 2020 hearing, conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Parker understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id*. at 9-12). Parker acknowledged that he understood he was giving up those rights, except for his right to counsel (*Id*. at 12). The Government then, at the Court's direction, set forth the elements of the offense to which Parker was pleading guilty. (*Id*. at 14-15). The Court advised Parker of the maximum penalties he would face as a result of his guilty

---

that Parker's criminal history should have been calculated at six points, yielding a Sentencing Guidelines range of 57 to 71 months.

plea and confirmed that he understood he faced a five-year mandatory minimum sentence. (*Id*. at 16-17).

The Court confirmed that Parker understood that, when imposing a sentence, the Court would consider the Sentencing Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Sentencing Guidelines. (*Id*. at 18-20). Parker confirmed that he understood that he would not be permitted to withdraw his guilty plea if the sentence differed from what he expected or from the Stipulated Guidelines Range set forth in the plea agreement. (*Id*. at 20).

The Court next confirmed that Parker had read the plea agreement, had discussed "every aspect of it" with his attorney, and understood it fully. (*Id*. at 21). Parker swore that apart from the plea agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the plea agreement. (*Id*. at 21-22). The Court further confirmed that Parker understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Guidelines Range. (*Id*. at 23).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Parker's plea. (*Id*. at 27). The Government's proof included:

> First, recording of intercepted calls with the defendant and a co-conspirator; second, law enforcement testimony; third, evidence of controlled buys from co-conspirators in Poughkeepsie, New York; and fourth, toll records; all of which would establish beyond a reasonable doubt that, from at least in or about September 2018 up to and including in or about February 2020, the defendant agreed with others to distribute, and possess with intent to distribute, at least 40 grams of substances and mixtures containing fentanyl, in the Southern District of New York and elsewhere.

(*Id*.).

5

Parker affirmed that he heard the Government's summary of its proof, and that it was accurate. (*Id*.). Parker then made a factual allocution and explained that in January 2020, he had a conversation with other people about buying and selling controlled substances; that he participated in the illegal distribution of the controlled substance in the Poughkeepsie area; that he knew what he was doing was illegal; and that the "buy and sale that took place involved more than 40 or more grams of drugs." (*Id*. at 27-28). Parker also confirmed, in response to a question from the Court, that he was involved in the four phone calls described in the Indictment. (*Id*. at 28). Parker's counsel, Kerry Lawrence, Esq. ("Plea Counsel"), advised the Court that Parker believed the drug involved was heroin, not fentanyl, but that Parker understood that as long as he knowingly participated in a conspiracy involving controlled substances, it did not matter whether the type of drug involved in the transactions was that which he intended. (*Id*. at 28-29). Parker confirmed, in response to the Court's questions, that he thought he was dealing in heroin; that it turned out based upon the Government's investigation that the drugs were not heroin, but fentanyl; and that he understood that regardless of the type of drug he thought he was purchasing and selling, the charge to which he was pleading guilty involved a conspiracy to distribute fentanyl. (*Id*. at 29-30).

The Court found that Parker had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent factual basis. (*Id*. at 31). The Court, accordingly, accepted the guilty plea, Parker's bail was revoked pursuant to 18 U.S.C. § 3143(a)(2), and he was remanded. (*Id*. at 31-34).

On March 17, 2021, Plea Counsel filed a letter informing the Court that the attorney-client relationship had completely disintegrated, and that Parker requested that new counsel be appointed to represent him. (Crim. Doc. 64). Parker separately wrote a letter to the Court requesting a new

lawyer "to take another look at [his] case." (Crim. Doc. 70). He wrote that he believed that he "was in a simple buyer-seller relationship with [his co-defendant and] not a conspiracy," that he was not involved with fentanyl, and he wanted to be sentenced "based on the facts not speculation." (*Id.*). Parker further stated that "by know [sic] means am I seeking to go to trail [sic] or even delay being sentenced." (*Id.*). On March 29, 2021, Magistrate Judge Judith C. McCarthy held a change-of-counsel hearing, relieved Plea Counsel, and appointed James E. Neuman, Esq. as Parker's new counsel. (Crim. Doc. Mar. 29, 2021 Min. Entry).

On June 15, 2021, Parker wrote a letter to the Court "hoping to be allowed to take [the] plea deal back." (Crim. Doc. 82). After receiving responses from Mr. Neuman and the Government, the Court scheduled a conference to enable Parker to state his position clearly on the record. Accordingly, the parties appeared for a conference on July 7, 2021. (Crim. Doc. 91, "Conf. Tr.). After Parker was placed under oath, Parker explained to the Court that he disagreed with the substance of the factual allocution he gave during the November 10, 2020 guilty plea hearing. (*Id.*). He explained: "I am guilty of . . . the acquisitions in the wiretap" but "I'm not going to say I'm guilty of agreeing to be in a conspiracy or possessing fentanyl." (*Id.* at 9). Accordingly, the Court asked Parker if he intended to withdraw his guilty plea. (*Id.* at 17-18). Parker specifically stated, under oath, that he did not intend to withdraw his guilty plea. (*Id.*). The Court then gave Parker a chance to think and discuss with his counsel, and directed Parker to advise by letter whether he wanted to move to withdraw his plea or stand by it. (*Id.* at 20-23). On July 10, 2021, defense counsel filed a letter advising the Court that Parker had reaffirmed that he did not wish to withdraw his plea and wanted to be sentenced in accordance with his guilty plea and plea agreement. (Crim. Doc. 89).

On October 21, 2021, Parker appeared before this Court for sentencing. (Doc. 102, "Sent. Tr."). The Court found that Parker's Sentencing Guidelines Range was calculated at 57 to 71 months, with a mandatory minimum statutory sentence of 60 months' imprisonment. Parker argued that his background, the circumstances of the crime, and the conditions of his confinement in light of the COVID-19 pandemic warranted the imposition of the statutory minimum sentence of incarceration. (Doc. 95; Sent. Tr. at 10-15). The Court addressed Parker's contention that he intended to deal in heroin and not fentanyl, explaining that both are very serious and dangerous drug crimes. (Sent. Tr. at 15-17). The Court considered Parker's difficult childhood, history of drug addiction, criminal history, and family ties. (*Id*. at 15-21). The Court balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, and the need to avoid unwarranted sentencing disparities. (*Id*. at 15-23). After considering the nature and circumstances of the offense, and the history and characteristics of the defendant, the Court agreed with both Parker and the Government to impose a Guidelines sentence, and sentenced Parker to the statutory mandatory minimum term of 60 months' imprisonment to be followed by a term of four years of supervised release. (*Id*. at 15-22). Parker's projected release date is February 11, 2025. (https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results (last visited Mar. 30, 2022)).

The judgment of conviction was entered on October 25, 2021. (Crim. Doc. 100). Three days later, on October 28, 2021, Parker mailed the Petition seeking to vacate, set aside, or correct his sentence. The Court, on November 23, 2021, directed Parker to advise whether he intended the Petition to be a notice of appeal of his judgment of conviction and advised that, if not, the Petition would be construed as a motion under 28 U.S.C. § 2255. (Civ. Doc. 4). By letter dated December 1, 2021, Parker advised the Court that he intended for the Court to consider the Petition under §

2255, not as a notice of appeal. (Civ. Doc. 5). The Court then issued an Order to Answer, directing the Government to respond to the Petition, on December 9, 2021. (Civ. Doc. 6).

On December 15, 2021, less than two months after his sentencing, Parker submitted the Motion seeking compassionate release, together with a letter supplementing the Motion. (Doc. 115, "Mtn."; Doc. 117, "Mtn. Supp."). On February 7, 2022, the Government filed memoranda of law opposing both the Petition and Motion. (Gov't Pet. Opp; Crim. Doc. 122, "Gov't Mtn. Opp."). The next day, on February 8, 2022, the Government filed a letter in which it advised the Court, based upon a letter from Parker docketed in the civil matter, that Parker was no longer housed at WCJ and had been designated to Danbury. (Crim. Doc. 123; Civ. Doc. 11). Parker's reply papers in connection with the Petition were filed on March 2, 2022, and Parker's Motion was fully submitted that day with the filing of his "Answer to the Government's Opposition." (Doc. 127, "Reply").[4] On March 11, 2022, Parker filed a "Rebuttal (Memorandum of Law) Answer to Opposition," supplementing his reply papers in connection with the Petition. (*See* Pet. Reply).

## **STANDARD OF REVIEW**

### I.   Relief Under 28 U.S.C. § 2255

A prisoner in federal custody may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*,

---

[4] Citations to the parties' filings correspond to the pagination generated by ECF.

614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 F. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017). Further, to successfully challenge a guilty plea conviction under Federal Rule of Criminal Procedure 11, "the petitioner must demonstrate that the violation was prejudicial—where the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

A hearing on a § 2255 petition is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible.'" *Brickhouse*, 2017 WL 1049509, at *4 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

II.   <u>Relief Under 18 U.S.C. § 3582</u>

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow

exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal [or] a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence, on a defendant's motion, if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The moving party bears the burden of proving that extraordinary and compelling reasons exist." *United States v. Rodriguez*, No. 19-CR-00012, 2020 WL 2787629, at *3 (S.D.N.Y. May 28, 2020).

"[T]he existence *vel non* of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); *see also United States v. Israel*, No. 05-CR-01039, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The statutory scheme thus requires first that a court determine that a defendant has exhausted his administrative remedies, that "extraordinary and compelling" reasons exist for a reduction in sentence, and that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Once these elements are met, the Court must then consider and determine whether the § 3553(a) factors support early release. Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and

compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431. Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.    The Petition

A.    Parker Waived His Claims in Whole or in Part

Parker, as discussed above, waived his right in the plea agreement, to "bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241 . . . of any sentence within or below the Stipulated Guidelines Range." (Plea Agreement at 5). Thus, to the extent Parker is challenging his sentence, which was below the Stipulated Guidelines Range, and within the Sentencing Guidelines Range determined by the Court, Parker "must first overcome the hurdle imposed by this provision." *Brickhouse*, 2017 WL 1049509, at *5.

A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is . . . valid and enforceable." *Abramo v. United States*, No. 12-CV-01803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)). A waiver is knowing if the "defendant

fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). District courts, in determining whether a defendant understood the consequences of a waiver, are "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *see also Abramo*, 2014 WL 1171735, at *9 (same). The knowing and voluntary nature of the waiver can be established by demonstrating that during the plea hearing the defendant's attention was drawn to the waiver provision in the plea agreement. *See United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000). A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings. *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989).

Parker's sworn statements made in open court in response to the Court's questions demonstrate that he was fully competent to enter a guilty plea and did so knowingly and voluntarily. Among other things, Parker affirmed that he had been educated through the eleventh grade; that the medications he was taking did not affect his ability to understand the proceedings; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications and one beer. The Court specifically discussed with Parker at the plea the waiver provision of the agreement, asking him: "do you understand that under the plea agreement, you're giving up your right to appeal or otherwise challenge your sentence, so long as I sentence you within or below the stipulated guidelines range of 70 to 87 months' imprisonment?" (Plea Tr. at 23). Parker replied: "Yes, your Honor." (*Id.*). Parker confirmed that he had discussed the plea agreement with his attorney, that he fully understood the plea agreement, and he had not been induced or forced in any way to enter into the plea agreement; and as discussed below, Plea

Counsel was not constitutionally ineffective. At the subsequent conference held on July 7, 2021, Parker stated, under oath, that he did not intend to withdraw his guilty plea, and reaffirmed that intention through his counsel's July 10, 2021 letter.

It cannot be disputed that Parker entered into the plea agreement and that he swore that he fully understood the terms of this agreement, including the waiver provision; that he was given an opportunity to move to withdraw his plea; that he stated, under oath, that he did not intend to withdraw his guilty plea; and that he wished to be sentenced in accordance with his guilty plea and plea agreement. As a result, the plea was knowing and voluntary and therefore his claims are waived in whole or in part by the waiver provision of the plea agreement.

 B. <u>Parker's Claims Fail on the Merits</u>

 i. <u>The Jurisdictional and Constitutional Arguments</u>

Parker claims that this Court lacked jurisdiction, the statute under which he was convicted is unconstitutional, the indictment was defective, and his due process rights were violated. Even if not waived by Parker's plea and plea agreement, which they are, these arguments lack merit. Bordering on the incomprehensible, the first three grounds appear to allege that Parker "was not arrested within the territorial jurisdiction of the United States" (Pet. at 13), the statute under which he was convicted does "not contain all of the essential elements of the offense" (*id*. at 14), and the indictment was defective because it did not state "that the offense alleged occurred within the special maritime and/or territorial jurisdiction of the U.S." (*id*.).

As to Parker's argument concerning the jurisdiction of this Court, the Supreme Court has repeatedly made plain that "[t]he production, possession, and distribution of controlled substances constitute a 'class of activities' that in the aggregate substantially affect interstate commerce, and therefore . . . Congress possesses the authority to regulate (and to criminalize) the production,

possession, and distribution of controlled substances even when those activities occur entirely within the boundaries of a single State." *Taylor v. United States*, 579 U.S. 301, 307 (2016). Thus, because a federal crime, for which Congress had jurisdiction to regulate, was properly charged, the Court had jurisdiction over Parker. *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) ("When a District Court has subject matter jurisdiction over the criminal offenses charged, it has personal jurisdiction over the individuals charged in the indictment and present before the court to answer those charges.").

With respect to Parker's conclusory arguments that the statutes under which he was convicted are unconstitutional and the Indictment defective, the Second Circuit has held that 21 U.S.C. §§ 841 and 846 are not facially unconstitutional. *United States v. Outen*, 286 F.3d 622, 636 (2d Cir. 2002). Parker's frequent citation to the "special territorial and maritime jurisdiction of the United States" is misplaced, as no event in this matter has, or is alleged to have, occurred on the high seas. *See* 18 U.S.C. § 7.

Finally, Parker's apparent "due process" argument is that the wiretap, "the key component to the Government's allege[d] charges," (Pet. Reply at 2) was unlawfully obtained. "When a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise*, 462 U.S. 306, 321, (1983). In any event, the argument is belied by Parker's statements, made under oath, as follows: "I am guilty of the wiretap, the acquisitions in the wiretap. I am guilty of that. That's obvious, in the discovery it's obvious. I mean, I'm not denouncing or denying that." (Conf. Tr. at 9-10).

ii.  The Ineffective Assistance of Counsel Arguments

Parker also claims that Plea Counsel was constitutionally ineffective. As an initial matter, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. . . . A guilty plea effectively waive[s] all ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996). In any event, the merits of these claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Parker to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id*. at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy,'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

"In the context of plea negotiations, a defendant must establish that his attorney either failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty." *Davis v. United States*, No. 18-CV-01308, 2019 WL 3429509, at *5 (S.D.N.Y. July 30, 2019). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-02175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991)

16

(alteration in original)). Prejudice in this case requires Parker to show that "but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received." *Davis*, 2019 WL 3429509, at *5.

Parker now claims that he was "misinformed of several things" by Plea Counsel and that Plea Counsel "never explained to [him] the full details involved in [his] case." (Pet. at 17). He argues that Plea Counsel "misinformed [him] of the essential elements of the allege[d] crime charged." (*Id.*). Further, Parker alleges that Plea Counsel "undermin[ed] [him]" at the plea and "never . . . advocated [his] arguments as to buyer + seller or drug type and drug quantity involved in this case totally against my authority or wishes." (*Id.*). Parker claims that these failures also infected the forfeiture amount as that was based on the "street value amount" of the "made up drug weight." (*Id.* at 18).

During the plea allocution, Parker affirmed that he was "satisfied with [Plea Counsel's] representation" of him and had "discussed with [Plea Counsel] the consequences of entering a plea of guilty." (Plea Tr. at 9). The Government put on the record the essential elements of the crime to which Parker was pleading guilty (*id.* at 14-15) and summarized the evidence expected to be introduced at trial (*id.* at 27). Parker affirmed that he understood that if he did not plead guilty, the Government "would have to prove each and every element" of that charge beyond a reasonable doubt at trial. (*Id.* at 16). He further affirmed that he heard the Government's summary of its proof, and that it was accurate. (*Id.* at 27). Parker also confirmed his understanding of forfeiture, agreed that he was forfeiting the amount with which he now takes issue, and consented to the entry of a separate forfeiture order which he signed. (Crim. Doc. 99). "A defendant's statements at his plea allocution 'carry a strong presumption of verity.'" *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "The subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Despite Parker's assertions that Plea Counsel failed to advocate on his behalf, Plea Counsel put on the record, during the plea, Parker's concern about drug type (i.e., heroin versus fentanyl), and there was an extended colloquy on this issue. (Plea Tr. at 28-30). In any event, the case law is clear that the Government does not have to prove scienter as to drug type or quantity when, as here, the defendant personally and directly participated in a drug transaction underlying a conspiracy charge. *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010). Thus, as a matter of law, that Parker believed the large quantities of drugs in which he was dealing to be heroin and not fentanyl is of no moment—the "heroin," according the Government's investigation, contained fentanyl, and under these circumstances where Parker has admitted that he personally and directly participated in the drug transaction underlying the conspiracy charge, the Government need not prove drug type or weight. And a buyer-seller argument in this case would likely have been ill-advised under the particular circumstances of this case as well. *United States v. Medina*, 944 F.2d 60, 65 (2d Cir. 1991) (buyer-seller "rationale does not apply, however, where, as here, there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use").

In addition, Parker was subsequently appointed new counsel and extensively discussed the possibility of withdrawing his plea, including during a conference with the Court on July 7, 2021. Despite being given the option of withdrawing his plea, Parker, through new counsel, decided to persist in his guilty plea and abide by the terms of the plea agreement. Parker's statements at his plea allocution and July 7, 2021 conference, "constitute a formidable barrier" in this collateral proceeding. *Blackledge*, 431 U.S. at 74 ("[T]he representations of the defendant, his lawyer, and

the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). Simply put, Parker's claims fail to establish that Plea Counsel's representation fell below an objective standard of reasonableness.

Finally, Parker does not claim that he would have gone to trial but for the many errors to which he now points. Indeed, Parker explicitly advised the Court that "by know [sic] means am I seeking to go to trail [sic] or even delay being sentenced." (Crim. Doc. 70). Accordingly, his ineffective assistance of counsel claims must be dismissed. *Tineo v. United States*, 977 F. Supp. 245, 259 (S.D.N.Y. 1996) ("Because Petitioner has failed to illustrate by a reasonable probability that, but for counsel's failure to object to the alleged Rule 11(c)(1) violation, he would not have pled guilty, this ground does not provide a basis for finding ineffective assistance of counsel.").

Under these circumstances, and as set forth above, the record in this case is more than sufficient to resolve the disputed factual issues without a hearing and fully supports a denial of the Petition.

## II.   The Motion

Parker moves under 18 U.S.C. § 3582(c)(1)(A) for compassionate release. As set forth *supra*, the statutory scheme requires that a court determine that a defendant has exhausted his administrative remedies, that "extraordinary and compelling" reasons exist for a reduction in sentence, that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) factors support early release. The Government expressly waived in its opposition any argument regarding the exhaustion requirement of § 3582(c)(1)(A) on the grounds that Parker was housed at WCJ, which is not a BOP facility. (Gov't Mtn. Opp. at 2). Since the motion for compassionate release was filed, however, Parker was

transferred to Danbury, which is a BOP facility. While the record bears no indication that Parker requested compassionate release from his warden at Danbury after his transfer there, the Court will consider the merits of Parker's motion "for the sake of judicial economy and to avoid future motions based on the facts asserted in this motion." *See United States v. Gineyard*, No. 19-CR-00144, 2021 WL 531969, at *3 (D. Conn. Feb. 12, 2021).

Parker's motion is based on his medical conditions—diabetes, hypertension, and asthma—as well as the purported "outbreak" of COVID-19 at WCJ. Regarding the alleged "outbreak," WCJ, like the entire region, experienced a surge in infections during the Omicron wave at the time Parker filed the Motion. By February, however, only four inmates—or 0.78% of the jail's total population—had COVID-19. (Gov't Mtn. Opp. at 2). As it had done in the past, WCJ took effective preventative measures, as demonstrated by the low infection rate by February. In any event, Parker is now housed at Danbury. The Court's independent research reveals that as of the date of this decision, Danbury reports zero positive COVID-19 cases and one previous death among inmates, and zero positive COVID-19 cases among staff. *See* Federal Bureau of Prisons COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2022).

With respect to "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), the Sentencing Commission has issued a Policy Statement setting forth certain definitions. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."); *see Ebbers*, 432 F. Supp. 3d at 426. While Parker's diabetes, hypertension, and asthma do not place him squarely within any of the Policy Statement's definitions of "extraordinary and compelling reasons," *see* U.S.S.G. § 1B1.13 cmt. n.1(A)-(D),[5] Parker asserts that the COVID-19 pandemic,

---

[5] Where, like here, the motion is brought by a defendant as opposed to the BOP Director, the Court is not constrained to the definitions set forth in the policy statement, and has discretion "to determine what reasons, for purposes of compassionate release, are extraordinary and compelling." *United States v.*

combined with his particular vulnerability to complications from COVID-19 because of these underlying ailments, constitutes an "extraordinary and compelling" reason for his release. (Mtn. at 4-5).

The Court accepts that the COVID-19 pandemic could qualify as an "extraordinary and compelling" reason, as preexisting conditions such as those suffered by Parker would likely place him at higher risk of complications should he contract COVID-19. *See People With Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Fed. 25, 2022) (stating that having asthma, diabetes, and hypertension "can make you more likely to get very sick from COVID-19").

Parker, however, has had access to, and received, two doses of the Moderna vaccine. (Supp. Mtn. at 2; Reply at 2). "Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk." *United States v. Rudy Mena*, No. 16-CR-00850, 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021). "Indeed, courts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no longer extraordinary and compelling." *United States v. Kosic*, No. 18-CR-00030, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (citing *United States v. Johnson*, No. 94-CR-00631, 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021); *United States v. Poupart*, No. 11-CR-00116, 2021 WL 917067, at *1-2 (D. Conn. Mar. 10, 2021); *United States v. Harris*, No. 18-CR-00628, 2021 WL 848865, *1 (E.D.N.Y. Mar. 5, 2021)).

Moreover, Parker has previously been diagnosed with COVID-19. (See Sent. Tr. at 19; Mtn. at 5; Supp. Mtn. at 2). Such a diagnosis, as the CDC notes, "significantly enhances protection

---

*Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

and further reduces risk of reinfection." Science Brief: SARS-Cov-2 Infection-Induced and Vaccine-induced Immunity, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html (last updated on Oct. 29, 2021). Having contracted the virus and recovered, his risk of reinfection is low, and his vaccination further reduces that risk. *See United States v. Rodriguez-Francisco*, No. 13-CR-00233, 2021 WL 326974, at *2 (S.D.N.Y. Feb. 1, 2021). Parker also has not alleged or proffered any evidence that he is unable to manage his medical needs in prison. *See United States v. Bush*, No. 18-CR-00907, 2021 WL 199618, at *2 (S.D.N.Y. Jan. 20, 2021). Under these circumstances, Parker has not established that his health conditions make his risk from COVID-19 an extraordinary and compelling reason warranting a sentence reduction.

Moreover, granting Parker a reduction in sentence would be neither "consistent with the applicable policy statement issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). Thus, even if the Court found Parker's application sufficient to establish "extraordinary and compelling" reasons, the Sentencing Commission policy statement also requires that the Court find that "the defendant is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2); and the Court's determination must then also be supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). This, the Court cannot do.

Parker has failed to address, much less sustain, his burden of proof that a reduction would be consistent with the applicable policy statement that he is not a danger to the safety of any other person or to the community. Parker states in the Reply that he was not a risk to the community when he was out on bail prior to his guilty plea. (Reply at 3). He provides no support for that contention and ignores the fact that he was arrested while he was on bail. Parker also does not

suggest that since this Court's findings at his sentencing he is no longer a danger to the community or incapable of engaging in the same type of behavior that led to his incarceration. *Cf.*, *United States v. Asaro*, No. 17-CR-00127, 2020 WL 1899221, at *1, *7 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to a previously violent defendant because his physical ailments, including expressive aphasia, made it unlikely that he remained capable to orchestrate complex criminal schemes); *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (granting compassionate release to a blind, wheelchair-bound defendant who required round-the-clock care and had an estimated eighteen months to live).

In addition, and again assuming Parker had made a sufficient showing regarding "extraordinary and compelling" reasons and established that his release would be consistent with the applicable policy statement, which he has not, Parker's Motion does not speak to the § 3553(a) factors, which also must be considered on this application. These factors, such as "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct" weigh against Parker's early release. 18 U.S.C. § 3553(a).

The Court imposed a sentence at the bottom of the Sentencing Guidelines Range and sentenced him to the statutory mandatory minimum of 60 months. At this time, Parker has served approximately one-quarter of that sentence. Release at this relatively early stage would not reflect the seriousness of Parker's conduct, nor would it promote the needs for deterrence and to protect the public. Moreover, Parker has not shown any reason that the sentence imposed by the Court is no longer sound. Indeed, Parker was sentenced only a few months ago and that sentencing fully accounted for the arguments Parker now raises. The Court was already aware of, and specifically

considered at sentencing, Parker's health conditions, the impact of COVID-19 on prison conditions, and Parker's contentions that he believed that the narcotics he purchased for resale were heroin and not fentanyl and therefore his crime should be considered less serious. (*See, e.g.*, Sent. Tr. at 15-19). Simply put, the Court's sentence in October 2021 remains the appropriate sentence today.

## CONCLUSION

Based on the foregoing, Parker's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence is DENIED and no hearing is necessary. Parker's motion under 18 U.S.C. § 3582(c) is likewise DENIED.

As Parker has not made a substantial showing of a denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the civil case pending under Docket No. 21-CV-09558. The Clerk of the Court is further directed to terminate the motion pending in the criminal matter, Docket No. 20-CR-00224-2 (Doc. 115), and to mail a copy of this Memorandum Opinion and Order to Parker at the address stated on the civil docket, # 87964-054, Federal C.F., 33 ½ Pembroke Rd., Danbury, CT 06811.

**SO ORDERED:**

Dated: White Plains, New York
     April 5, 2022

_____
Philip M. Halpern
United States District Judge